UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY


WILLIE L. DUMAS, III,

     Movant,

v.                                        Case No. 5:07-cv-00795
                                          Case No. 5:04-cr-00058-1

UNITED STATES OF AMERICA,

     Respondent.


## AMENDED PROPOSED FINDINGS AND RECOMMENDATION

Movant, Willie Dumas, III (hereinafter "Defendant"), filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on December 7, 2007 (docket # 175), supported by a memorandum (# 176).  The United States filed a response in opposition (# 188), with supporting affidavits from Defendant's former attorneys, Stanley I. Selden (Exhibit A), S. Mason Preston (Exhibit B), and Marc L. Resnick (Exhibit C).  Defendant filed a reply (# 190).

Defendant pled guilty to engaging in a conspiracy to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (## 107, 110, 114-15).  He is serving a sentence of 262 months, to be followed by a five year term of supervised release (Judgment Order entered June 7, 2005, # 136).  Defendant was sentenced as a career offender, pursuant to United States Sentencing Guidelines ("USSG") §4B1.1, with a Total Offense Level

of 34, and a Criminal History Category of VI.  The sentence of 262 months was the bottom of the guideline range.

Defendant's guilty plea was conditional, pursuant to *Fed. R. Crim. P.* 11(a)(2), to preserve his right to appellate review of an adverse ruling on a motion to suppress.  His appeal, in which he filed a *pro se* supplemental brief, was not successful.  United States v. Dumas, No. 05-4640, 190 Fed. Appx. 310 (4th Cir. July 18, 2006), cert. denied, 549 U.S. 1099 (Dec. 11, 2006).

On January 25, 2008, Defendant moved to amend his § 2255 motion to include an issue concerning the drug ratio disparity addressed in Kimbrough v. United States, 129 S. Ct. 558 (2007) (# 185).  It appears that Movant did not serve the United States Attorney with a copy of his Motion to Amend, and the United States has not filed a response to it.  The motion to amend will be addressed at the end of this document.

## Facts of the Case

According to the Presentence Report ("PSR"), two confidential sources informed Beckley investigators that "Emmanuel" was traveling from Beckley to Columbus, Ohio, to pick up a quantity of cocaine.  (PSR, ¶ 17, at 5.)  On March 19, 2004, the officers were advised that "Emmanuel" had returned to Beckley and brought the cocaine to 207 Barber Avenue.  Id., ¶ 18.  Officers went to the address and performed a "knock and talk." Id., ¶ 19.  The resident of the address, Ms. Sharon Dumas, answered the door and granted the

2

officers permission to search.  Id., ¶ 20.  Two men were present,
Emmanel Stoumile and Defendant, who are nephews of Ms. Dumas.  Id.,
¶ 21.  Defendant gave permission for his bags to be searched.  Id.
The officers found 178 grams of cocaine base and 126 grams of
marijuana in a plastic shopping bag behind a couch; Defendant
admitted that the bag was his and he was aware of the drugs being
in his bag.  Id., ¶ 23, at 6.  Police found $3,910 in cash on
Defendant.  Id.  Defendant gave a statement in which he admitted
transporting the drugs, for which he received a "cut" of $2,500.
Id., ¶ 25.  Defendant's appeal concerned whether Defendant had a
legitimate expectation of privacy in the plastic shopping bag in
which the drugs were found.

### Grounds for Relief

Defendant's grounds for relief are set forth in his memorandum
as follows:

> Ground one: Movant was denied effective assistance of
> counsel as guaranteed by the Sixth Amendment to the U.S.
> Constitution.
>     1.   Counsel failed to properly investigate,
> research and litigate Dumas' pre-trial Fourth
> Amendment claims.
>     2.   Counsel failed to properly advise Dumas
> related to plea negotiations and guilty plea
> process.
>     3.   Counsel failed to adequately explain to
> Dumas the elements and nature of offense under
> 21 U.S.C. § 841(a)(1)(B), § 846 and applicable
> sentencing exposure under U.S. Sent.
> Guidelines.
>     4.   Counsel failed to object, or otherwise
> preserve for review previous counsel's
> handling of suppression and failed to move to
> conduct new hearing.

3

5.   Counsel failed to properly object to presentence report and move for downward departure under USSG §4A1.3.

6.   Counsel failed to object or otherwise preserve for appellate review the District Court's use of extraneous facts establishing Dumas' prior conviction for intimidation of witness as "crime of violence" for career offender classification.

7.   Counsel failed to properly argue that Dumas' prior Ohio conviction for "intimidation of witness" was not a "crime of violence" for purposes of career offender.

8.   Counsel was ineffective for not advising Dumas that he could collaterally challenge Ohio state conviction used to enhance Dumas' sentence.

Ground two: Movant's guilty plea was not made voluntarily and intelligently as required by the Due Process of Law Clause of the Fifth Amendment, U.S. Const.

Ground three: Movant was deprived [of] effective assistance of appellate counsel as guaranteed by the 5th & 6th Amendments.

1.   That Dumas' plea was involuntarily induced by false promises of counsel Mason Preston.

2.   Counsel Stanley Selden was ineffective for not calling witnesses on defendant's behalf.

3.   Counsel Preston was ineffective for not refiling motion to suppress.

4.   For not appealing Dumas' sentence.

5.   For not consulting defendant about what issues to present.

(Memorandum, # 176.)  Attached to the memorandum is a lengthy and detailed declaration by Defendant, which he asserts is made under penalty of perjury.  The declaration is not signed.  He also provided an affidavit from his co-defendant, Emmanual Stoumile.

**Grounds one and three - Effective Assistance of Counsel**

The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in

4

which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  <u>Id.</u>, at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  <u>Id.</u>, at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

<u>Id.</u>, at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>, at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  <u>Id.</u>, at 697.  In the context of a case in which a defendant pled guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Fields v. Attorney General</u>, 956

F.2d 1290 (4th Cir. 1992).

Investigate, research and litigate 4th and 5th Amendment claims

Defendant claims that attorney Selden was ineffective because he "(1) failed to adequately investigate facts related to suppression motions; (2) failed to procure needed witness for suppression hearing; (3) failed to cross-examine witnesses concerning sequestration order; [and] (4) failed to move for suppression of statements." (Mem., # 176, at 5.) Defendant does not specify what facts were not adequately investigation by Mr. Selden.   Defendant does not identify the witness who he asserts were needed.

The government responded that Defendant participated in discussions and strategic decisions, including that Defendant would not testify, and that counsel did move to suppress Defendant's statements.   Mr. Selden's affidavit addresses the allegations in more detail:

> **I.   Introduction/Background:**
> * * * I was relieving Matthew Victor as counsel for Mr. Dumas.  Mr. Victor ha[d] already filed a Motion to Suppress certain evidence in Mr. Dumas['] case.   From 5/10/04 through 10/19/04, I zealously represented and defended Mr. Dumas in all phases of his case.   This included extensive preparation, research and argument of the Motion to Suppress.    * * * We had a subsequent Motion Hearing, on August 17, 2004, to specifically address our Motion to Suppress evidence.   This was thoroughly argued and presented to the Court in a 5 1/2 [hour] hearing before Judge Goodwin on August 17, 2004. At that hearing, all relevant witnesses were called by me after conferring with Mr. Dumas and discussing all aspects of his case with him both before and during the hearing. The witnesses that were called were extensively

questioned by . . . me for defendant Dumas.  Mr. Dumas
was kept informed as to all proceedings, and especially
all aspects of the presentation of his Motion to Suppress
in Court.  I discussed with Mr. Dumas what witnesses to
call, what they could offer as to testimony, and what
strategy I would use in trying to get the evidence
suppressed.  Mr. Dumas was involved in and approved all
of this.  After this extensive hearing, the Judge took
the issues under advisement and allowed time for any
party to file anything additional. * * * I filed no
additional supplements or briefs because our position was
thoroughly covered previously in our brief filed 7/12/04,
as well as argued in court.  Despite all this, the
evidence was NOT suppressed and Mr. Dumas was very upset
by Judge Goodwin's rulings which came down on 10/4/04.

II.  **Factual Answer to Specific Allegations:**

1) Mr. Dumas alleges that at the Motions hearing on
August 13, 2004, that Mr. Dumas wanted to testify but Mr.
Selden told him he could not because Mr. Selden did not
want him to, and that Mr. Selden would not let him take
the stand.  These are false statements.  Mr. Dumas was
advised by counsel that it was very risky to take the
stand.  That if Mr. Dumas took the stand, he would be
open to cross-examination and impeachment tactics by the
U.S. Attorney and that, further, if the Judge believed he
was testifying falsely, he would subject himself to
further charges, such as perjury.  After a thorough
discussion with Mr. Dumas, it was JOINTLY decided that he
would not testify.

2) Mr. Dumas alleges that at that same hearing, during a
break, that officer Montgomery conferred with other
officers in the anteroom while still under oath and
sequestered.  This is true and Mr. Selden did bring this
to the Court's attention.  Mr. Dumas further states that
counsel Selden "never attempted" to question Montgomery
about this.  I do not have an absolute clear recollection
about whether or not I questioned Montgomery about this,
specific incident but submit that officer Montgomery was
thoroughly questioned by me while on the stand as to all
relevant issues.

3) Mr. Dumas states that Judge Goodwin "ordered"
additional briefs to be filed subsequent to the Motions
hearing on August 13, 204 about whether defendant Dumas
had standing to challenge the search and seizure.  Judge

Goodwin did not ORDER additional briefs be filed; he
issued an order allowing additional briefs if counsel
wished to do so.  Since I thoroughly briefed this matter
prior to the hearing in my 20 page Response Brief filed
7/12/04, I did not believe there was anything further to
add.  There also was the extensive testimony taken and
arguments heard in the hearing itself.  Additionally, Mr.
Ernest Skaggs submitted a short supplemental brief for
defendant Stoumile, which included anything I might have
submitted on behalf of Mr. Dumas.

4) Mr. Dumas alleges that I "failed to adequately
investigate facts related to suppression motions."  This
is false.  I have attached my timesheets which document
my thorough research and investigation into this matter.

5) Mr. Dumas alleges that I "failed to procure needed
witnesses for suppression hearing."  This is false.  I
called all relevant witnesses.  Mr. Dumas was not called
because we jointly agreed that he shouldn't testify
because of the risks.

6) Mr. Dumas alleges I "failed to cross-examine witnesses
concerning sequestration order."  This is false.  This is
already addressed i[n] this response.

7) Mr. Dumas alleges I "failed to move for suppression of
statements."  This is false.  Although I am unsure which
statements he means, I filed an extensively researched
and written brief to support the already filed Motion for
suppression of damaging evidence and statements (this was
filed by prior counsel, Mr. Victor).  I also argued and
cross-examined witnesses to suppress that same evidence
in an almost 6-hour hearing on August 13, 2004.  I had
also presented arguments, etc. in prior motions hearings.

(# 188-2, Exhibit A, at 1-4.)

Defendant's Reply argues that the witnesses he wanted called

were Sharon Dumas, Sharmaine, cousin Emmanuel and Missy.  (# 190,

at 4.)  He disputes Mr. Selden's version of events concerning

Defendant's desire to testify, and claims that Mr. Selden "bullied"

him into not taking the witness stand.  Id., at 5.  He persists in

8

his belief that Mr. Selden failed to obey a court order to file a
brief.  Id.  Defendant contends that Mr. Selden's short assertion
to the court that Dumas' statements should be suppressed was
insufficient and he complains that Mr. Selden failed to question
the police officers about their mistreatment of Defendant after his
arrest.  Id., at 5-6.

Investigation/Witnesses

Mr. Selden's timesheets reflect significant time spent by him
on the suppression issue.  Examples of Mr. Selden's efforts include
the following:

```
07-07-04  0.3  Received and reviewed Motion to Suppress
07-08-04  7.0  RESEARCH on search and seizure cases
07-08-04  0.2  Telephone conference with client
07-09-04  4.0  Research and Case review of 4th, 5th and 6th
               amendment rights and seizure cases
07-09-04  2.0  Review of transcripts and discovery documents in
               preparation of Motions Hearing
07-09-04  0.5  Received and reviewed Miller Bushong's Response to
               our Motions; copy & letter to client
07-12-04  4.0  Drafted and research Brief and Response to U.S.
               Attorney's responses and arguments
07-12-04  2.0  Motions Hearing
07-14-04  0.3  Telephone conference with client
08-03-04  0.3  Telephone    conference    with    Attorney    Bushong
               regarding Status Plea and Suppression Hearing
08-10-4   0.2  Telephone    conference    with    Attorney    Bushong
               regarding Sharon Dumas is unavailable for Hearing
               and possible continuance
08-10-04  0.2  Telephone conference with client regarding location
               of Sharon Dumas
08-10-04  0.2  Telephone conference with Betty and Sharon Dumas
08-10-04  0.2  Telephone    conference    with    Attorney    Bushong
               regarding witness located
08-13-04  0.8  File review and preparation for Hearings
08-13-04  5.6  Motions Hearings; Motion to Suppress, etc.
08-13-04  1.0  Conference with client and witnesses
08-26-04  0.3  Received & reviewed Defendant Stoumile's Brief
08-30-04  1.0  Received & reviewed Atty Bushong's Memorandum of
```

```
                    Law
09-20-04  1.0   Received and reviewed Motions Hearing Transcript
                from 8-13-04; prepared for arguments
```

(# 188-2, Ex. A, at 9-10.)

The witnesses sought by Defendant were Sharon Dumas (who testified), co-defendant Emmanuel Stoumile (who was unavailable pursuant to his privilege against self-incrimination), "Missy" and "Sharmaine." The court assumes, based on Defendant's Declaration (# 176, ¶¶ 21 and 30, at 25-26), that these individuals are the two black females who were in Sharon Dumas' living room when the police officers entered. (Tr. Hrng, Aug. 13, 2004, # 78, at 24.) While Defendant has provided two incomplete names, he has failed to provide a proffer of the specific, favorable testimony which Missy and Sharmaine would have given if they had testified.

An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1991). Furthermore, the reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney. See Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991). In the instant case, it appears that Mr. Selden conducted an adequate investigation under the circumstances.

### Defendant's Desire to Testify

Defendant's assertion that he was "bullied" into not taking

10

the witness stand at the suppression hearing fails to persuade the undersigned that he was denied effective assistance of counsel.  In a recent decision concerning this issue, the Fourth Circuit held:

> . . . the advice provided by a criminal defense lawyer on whether his client should testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1436 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065, 104 S. Ct. 750, 79 L.Ed.2d 207 (1984); <u>see also</u> <u>Jones v. Murray</u>, 947 F.2d 1106, 1116 n.6 (4th Cir. 1991)(reiterating principle that advice to testify is paradigmatic of strategic decision); <u>Rogers-Bey v. Lane</u>, 896 F.2d 279, 283 (7th Cir. 1990)(concluding that counsel's advice not to testify based in part on erroneous belief that defendant could be impeached by prior conviction, was not deficient performance); <u>Reyes-Vejerano v. United States</u>, 117 F. Supp.2d 103, 108-09 (D.P.R. 2000)("Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]").

<u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002).

Violation of Sequestration Rule

During the suppression hearing, Mr. Selden brought to the court's attention that Detective Montgomery, "while still under oath and still testifying, stepped out and conferred with the other officers in the ante room, at which time I went out and informed him he was still testifying and to cease that discussion."  (Tr. Hrng, Aug. 13, 2004, # 78, at 48.)  Judge Goodwin advised Mr. Selden that he "certainly may cross-examine about that issue." <u>Id.</u>

While Mr. Selden did not cross-examine Det. Montgomery about the conversation with other officers, he did question Corporal Jason McDaniel as to whether he discussed his testimony with Det.

11

Montgomery.  Id., at 91.  Cpl. McDaniel replied that he had discussed his testimony only with Assistant United States Attorney Miller Bushong.  Id.  There is no evidence whatsoever that Det. Montgomery was discussing his testimony with the other officers or, if he did, that the discussion had any effect on the other witnesses' testimony.

    Suppression of Defendant's Statement/Filing of Brief

    Defendant gave a statement to police officers at the station after his arrest.  Defendant's first attorney, Matthew Victor, moved to suppress "any and all statements given to law enforcement officers during the early morning of March 19, 2004."  (# 40, at 1.)  His second attorney, Mr. Selden, filed a memorandum in support of the motion, arguing that his statement was "fruit of the poisonous tree" of the unlawful search of Sharon Dumas' residence, and was the result of coercion at the police station.  (# 56, at 8.)

    The United States filed a memorandum in opposition to the motion, attaching various exhibits (# 60).  Exhibit A is the waiver of rights signed by Defendant (# 60, at 12).  His statement is found at Exhibit B, id., at 14-22.

    At the suppression hearing, Mr. Selden asserted that "the conditions were not conducive to a voluntary statement at the police department" and orally moved to suppress the statement. (Tr. Hrng, Aug. 13, 2004, at 34-35.)  Mr. Selden inquired briefly

12

of Det. Montgomery concerning his client's use of the restroom and his access to food and drink at the police station. <u>Id.</u>, at 81-82. No other evidence of the allegedly coercive conditions was presented.

Judge Goodwin inquired of counsel concerning the suppression motion. <u>Id.</u>, at 139-40. After consulting with Defendant, Mr. Selden advised that Defendant claimed ownership of the plastic shopping bag which contained the drugs and that he asserted standing to complain about the search and seizure of the bag. <u>Id.</u>, at 141. With respect to Defendant's <u>Mirandized</u> and taped statement given at the police station, Mr. Selden argued that "the statements were only given as a result of [the finding of] that contraband. <u>Id.</u>, at 145. When Judge Goodwin commented that he had not heard anything persuasive on suppressing the statements, Mr. Selden replied, "I don't want to waste the Court's time with that argument. We do submit that our clients were held for an unreasonably long time in question." <u>Id.</u> Judge Goodwin replied, "You don't need to brief that. I deny it on that ground." <u>Id.</u>, at 145-46. The judge then directed the parties to file briefs by August 26, 2004, on "the issue of the standing on the personal property." <u>Id.</u>, at 150. Despite his prior denial of the motion to suppress the statements, Judge Goodwin stated, at the conclusion of the hearing, "All motions not ruled upon today, except the motion to suppress the materials seized during the search and the

13

statements, are denied." Id., at 151.

The government filed a memorandum on the issue of standing, and included a short argument which asserted that Defendant's waiver of his Miranda rights was valid.  (# 76, at 6.)  According to the docket sheet, neither defendant submitted a memorandum.  Co-defendant Stoumile disclaimed ownership of the plastic shopping bag and conceded lack of standing to contest the search of that bag. (Order entered Oct. 4, 2004, # 83, at 1.)

On October 4, 2004, Judge Goodwin entered an Order which commented on Mr. Selden's failure to submit a brief:

> At the conclusion of the hearing [on August 13, 2004], the court took the matter under advisement and ordered the parties to brief the issue of standing.  Counsel for defendant Stoumile has since submitted a brief in which he admits that his client does not have standing to contest the search at issue.[1]  Counsel for defendant Dumas has yet to submit a brief.  Counsel's decision to ignore the court's order suggests that counsel may intend to waive any argument on standing his client may have. Regardless, the court will address the motion to suppress because it concerns significant constitutional rights belonging to the defendant.

Id.  The Order discussed at length the issue of standing to contest the search and seizure of the plastic shopping bag.  Id., at 2-8. At the conclusion of the Order, Judge Goodwin wrote, "The court has found no unlawful search, and the defendants failed to present any evidence suggesting that their statements were coerced.  The court, therefore, also **DENIES** the defendants' motion to suppress their

---

[1] The brief is not filed with the Clerk.

statements to the police as fruits of an unlawful search." Id., at
8.  When the Fourth Circuit reviewed the suppression decision, it
addressed the plastic shopping bag and ruled, "Our review of the
record leads us to conclude that the district court correctly
denied Dumas' motion to suppress evidence and statements." Dumas,
190 Fed. Appx. at 311.

Defendant's Declaration includes allegations that his "will
was depleted by lack of sleep, drinking water and food so I
capitulated to officers' coercion and told them what I thought they
wanted to hear," and he "would not have agreed to be interviewed or
waived my rights had it not been for the deprivation of sleep,
water, restroom facilities and threats by officers." (# 176, ¶¶ 13
and 15, at 24.)  Considering paragraphs 13 and 15 with Defendant's
complaint that he was bullied into not testifying, it appears that
Defendant contends that he should have been given the opportunity
to testify as to the conditions at the police station which
resulted in his waiving his Miranda rights and giving a statement.

The record reflects that police officers entered Sharon Dumas'
residence around 3:00 a.m., and stayed for about an hour.  (Tr.
Hrng, # 78, at 32, 49, 79.)  Defendant was handcuffed for
approximately 45 minutes from the time he was placed under arrest,
transported to the police station, advised of his rights, until he
gave his statement.  Id., at 80-81.  Defendant signed his Miranda
waiver form at 4:23 a.m., and gave his statement at 5:03 a.m.  (#

15

60, at 12, 14.)  Assuming that Defendant was deprived of access to a toilet, water and food during that period, it cannot be said that such deprivation constitutes unreasonable coercion.   Moreover, Defendant's claim that Detective Montgomery banged on the table to awaken Defendant, was aggressive, had a physically threatening demeanor, and made threats to arrest his aunt, have his aunt evicted, and have his cousin placed in Child Protective Services, (# 176, ¶¶ 9, 11, at 24), is inconsistent with his signature on the waiver of rights form.  The form includes a statement that "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me."  (# 60, at 12.)

> The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary.  The proper inquiry "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 2046, 36 L. Ed.2d 854 (1973)). * * *

> To determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, courts must consider "the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Pelton*, 835 F.2d at 1071 (quoting *United States v. Wertz*, 635 F.2d 1128, 1134 (4th Cir. 1980); * * *.

United States v. Braxton, 112 F.3d 777, 780-81 (4th Cir. 1997) (*en banc*).

The choice and litigation of pre-trial motions in a criminal

case are strategic and tactical decisions which should be made by defense counsel after consultation with the client. <u>ABA Standards for Criminal Justice</u>, Defense Function Standard 4-5.2(b). It appears from Defendant's Declaration and from Mr. Selden's affidavit that Mr. Selden consulted with Defendant, but Defendant did not agree with Mr. Selden's strategic and tactical decisions. While Mr. Selden should have filed a memorandum as required by Judge Goodwin, it is apparent that Judge Goodwin's decision took into consideration the arguments previously made on Defendant's behalf. Moreover, Judge Goodwin's decision was correct on the facts and the law. As a visitor in a residence, Defendant had no expectation of privacy in a plastic shopping bag in the common area.

After thorough review of the record, it appears that Mr. Selden's advice to Defendant that he not testify concerning the conditions at the police station was appropriate and even wise. Given Defendant's prompt waiver of his rights, and his willingness to give a tape-recorded statement, the totality of the circumstances strongly suggests that Defendant's statement was given freely and voluntarily without any compelling influences. Mr. Selden's strategic decision not to press hard on the voluntariness of Defendant's statement was reasonable professional assistance.

For the foregoing reasons, the undersigned proposes that the

17

presiding District Judge **FIND** that Mr. Selden provided effective assistance of counsel, well within the wide range of what is considered reasonable professional assistance with respect to the investigation, research and litigation of Defendant's Fourth and Fifth Amendment claims.

<u>Entry of guilty plea</u>

Shortly after Judge Goodwin denied Defendant's motion to suppress, Defendant expressed his dissatisfaction with Mr. Selden's representation.   On October 12, 2004, Defendant filed a *pro se* motion for new counsel (# 91), which was granted on October 25, 2004, and S. Mason Preston was appointed (## 97, 103).

Defendant alleges that both Mr. Selden and Mr. Preston were ineffective with regard to advice related to negotiation of a plea agreement and entry of a guilty plea.   The court will not address Defendant's complaints about Mr. Selden because he was relieved of representation before Defendant signed the plea agreement and entered his guilty plea.

Defendant contends that Mr. Preston denied him effective assistance because he failed to

- effectively apprise Dumas as to the applicable Federal Guideline laws (i.e., enhancement provisions)
- apprise him of the strength of the government's case
- identify favorable evidence
- investigate Dumas' prior criminal history adequately
- explain the ramification of his prior criminal history
- advise Dumas that he would be subject to Career Offender status
- advise him of the elements of §§ 841(a)(1) and 846
- insure that Dumas' plea was voluntary

18

• re-litigate the suppression issues.

Defendant's Declaration contains numerous statements in support of his allegations (# 176, ¶¶ 38-49, at 27-28.)

The government's response argues that Defendant's accusations against is attorneys are "patently false," citing to the affidavits of Messrs. Selden and Preston. (# 188, at 13.) The United States notes that during the plea hearing, Defendant swore that he had not been forced, threatened, coerced or intimidated into pleading guilty and that he was acting voluntarily and of his own free will in entering his plea. <u>Id.</u>, at 15. Mr. Preston's affidavit contains the following pertinent averments:

> 1) I deny that I failed to properly advise Mr. Dumas as we negotiated his plea as alleged in section 2 of his motion. In fact, I spent several hours with him going over the possible sentences, the application of the Federal Sentencing Guidelines, the impact of his past criminal history and the possible defenses or arguments we could make. In particular we discussed the fact that he was subject to the Career Criminal provisions and that if the Government chose to file a notice under § 851 even that might be increased due to his prior history in Ohio. I felt he fully understood the significant sentence facing him if he entered a plea and the possibility of an even longer sentence if he chose to go to trial and lost. In fact I feel that it was obvious from his change of mind during his first plea hearing with me that he was still weighing the benefits of the plea against the long sentence he was facing.

> 2) I agree that Mr. Dumas had misgivings at his first plea hearing with me, however, I do not believe it was due to any lack of knowledge of the elements of the offen[s]es. I agreed with the recess, went back to meet with Mr. Dumas, brought him the entire file and the Guidelines and attempted to answer any and all questions he had.

I expressly deny that I ever threatened him, attempted to intimidate him or was in any way upset that he had elected not to complete his plea hearing. I have never felt that I had the right to make the decision between plea and trial for any of my clients. I can only provide information about the choices. The ultimate decision is always theirs. So it was with Mr. Dumas.

3) At the time I was appointed, the Trial Court Judge had already ruled on the suppression motion litigated by prior counsel. While I did question prior counsel's failure to respond to the Court's question about this defendant's standing to object to a search. The research I did into the subject showed the majority of cases ran strongly against this defendant. I do not recall Mr. Dumas asking me to attempt to re-open the issue after I told him that.

\* \* \*

7) Again I would state that defendant Dumas and I went over every aspect of his case and plea. He was aware that he could be found a Career Offender before he backed out of his fi[r]st plea hearing, and before his final plea hearing we again went over his entire case. To the best of my knowledge I answered all his questions and pointed out the good, the bad and the ugly to him prior to his decision to enter a plea. I tried to warn him throughout the process that this was not the Ohio system and he was going to get serious time.

(# 188-3, Ex. B, at 1-3.)

Defendant's reply reiterates his allegations that he was misadvised as to his Career Offender status, the significance of a second felony conviction relating to controlled substances, and the likelihood of the presiding District Judge finding that he was a Career Offender.

The plea hearing did not go smoothly. At the beginning of the hearing, Defendant had not signed the plea agreement; the court granted a recess, addressing Defendant as follows:

20

THE COURT: Mr. Dumas, I – no one, not this judge, not any prosecutor, no lawyer, no witness, or anyone you know should have any interference in you making decisions about your case.   You make decisions based on your informed judgment and with the advice of your lawyer. Just because you're here and have made this motion [to plead guilty] doesn't mean that you're under any pressure to do anything.   Do you understand that?

THE DEFENDANT: Yes, Your Honor.

(Tr. Plea Hrng, # 129, at 2-3.)   The court took a recess which lasted twenty minutes.  Id., at 3.

When the hearing resumed, Defendant advised that he wished to enter a guilty plea and took the oath.  Id.  Defendant expressed reservations whether he had adequate time to discuss his case with Mr. Preston.  Id., at 5.  Mr. Preston advised the court that Defendant's concern was whether he knew exactly the amount of drugs within the bag.  Id., at 6.  The United States advised the court that Defendant gave a Mirandized statement that he knew he had the drugs.  Id., at 7.  "The defendant does not have to say in his factual basis that he knew there was 178 grams of cocaine base in the bag.  The defendant simply has to have an awareness that it was more than 50 grams."  Id.

Judge Goodwin then conducted a colloquy with Defendant in which Defendant stated that he signed the plea agreement, he understood it, his lawyer had gone over it "piece by piece" with him, and answered any questions he had about it.  Id., at 8. Assistant U.S. Attorney Bushong then summarized each paragraph. Id., at 8-11.  Defendant assured the court that he understood the

plea agreement, had gone over each part with his attorney, and wanted the court to accept it. Id., at 11-12.

Judge Goodwin read the charge to Defendant, who pleaded "Guilty," but shrugged his shoulders. Id., at 14. The court stated, "I can't take a shrugged plea. * * * Why are you shrugging?" Id. Defendant replied, "I guess because I feel that the indictment is, is not really true, but now my statements I felt I was forced to make." Id. The court declined to take the guilty plea and voided the plea agreement. Id., at 16.

An hour and one-half later, the hearing resumed, with the court making the following comments:

> THE COURT: Mr. Dumas, I've been advised that in the last hour and a half since you left the courtroom that you've had a change of heart and you now wish to plead guilty and continue with the guilty plea. Is that right?

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: My problem with that, and I want to be very certain, is you indicated that in order to plead guilty to Count One you'd have to lie. And I can't let you lie. It has to be true that you're guilty or I can't let you plead. Do you understand?

> THE DEFENDANT: Yes, Your Honor.

Judge Goodwin read the charge to Defendant again. Id., at 17-18. The court then reviewed the statute, 21 U.S.C. § 846, and its elements and definitions. Id., at 18-21.

Defendant provided the following factual basis:

> THE DEFENDANT: I, I followed a guy down here with the knowledge that he did have drugs on him. And when we got to Beckley, he gave me a bag to hold for him. And I

asked him what was in the bag, and he told me like two
ounces of crack.  And I told him, "All right."  And I
took the bag, put it behind the couch in my aunt's house,
and waited for him to come back and get it.

And on the way down here, my cousin got a phone call
or something like that from somebody asking about some
drugs and things, and I told my cousin that I might know
somebody that's got some . . ., referring to the guy we
was following down here.

And once he got the phone call, then he asked me
that the person wanted a certain amount of drugs.  But
then I told him like I didn't want nothing to do with it
because I was nervous and things at the time, you know.
That's when the police came over and they found the drugs
in the house.

Id., at 21-22.

After the United States gave its version of the factual basis

for the plea (id., at 24-26), Judge Goodwin questioned Defendant

step-by-step concerning the facts underlying the plea.  Id., at 26-

29.  The court confirmed that Defendant understood the maximum

penalties.  Id., at 32-33.

Defendant acknowledged discussing the Sentencing Guidelines

with his attorney, id., at 33, and that he understood that

dissatisfaction with the sentence would not be grounds for

withdrawing his guilty plea, id., at 35.  The court then reviewed

the constitutional and other rights which are given up by entry of

a guilty plea.  Id., at 37-39.  Defendant specifically denied that

anyone had forced, threatened, coerced, intimidated or talked him

into pleading guilty.  Id., at 39.  When asked if anyone had

promised him anything, Defendant stated, "they said I wouldn't get

23

life." Id., at 40.   Judge Goodwin advised Defendant that "the maximum penalty is life imprisonment and that no one can promise you you won't get life. * * * So, you are exposed to life imprisonment.  So, knowing that, do you still wish to enter a guilty plea?" Id., at 40.  Defendant replied, "Yes, Your Honor." Id.

Finally, Judge Goodwin asked these final questions:

THE COURT: * * * Are you pleading guilty simply to be able to appeal that thing about the motion to suppress?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty because you are guilty?

THE DEFENDANT: I'm pleading guilty because I don't want to go to trial.  And with the evidence they've got, I feel I'll get convicted.

THE COURT: That's not my question.  Are you guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are you telling me the truth?  This is the most important question you've ever answered in your whole life.

THE DEFENDANT: Yes, Your Honor.

Id., at 40-41.  Whereupon, Defendant signed the guilty plea form. Id., at 41.

Judge Goodwin found that Defendant's statements were sufficient to form a factual basis for the plea, but he commented that Defendant's statements and the statements of Emmanuel Stoumile "don't match and somebody isn't telling the truth." Id., at 42.

24

The thorough Rule 11 colloquy conducted by Judge Goodwin is strong evidence that Defendant's accusations against Mr. Preston lack merit.  It is apparent that Mr. Preston spent substantial time with Defendant explaining the consequences of his plea and his exposure to life imprisonment.  Defendant's repeated assurances, under oath, to Judge Goodwin that his plea was entered voluntarily and of his own free will cannot be set aside now that Defendant's conviction is final.  The undersigned proposes that the presiding District Judge **FIND** that Mr. Preston did not provide ineffective assistance of counsel to Defendant with respect to the negotiation of his plea agreement and the entry of his guilty plea.

Defendant asserts that Mr. Preston should have re-litigated the motion to suppress.  When Judge Goodwin issued his October 4, 2004 Order denying the motion to suppress, that ruling became the law of the case, and Mr. Preston preserved Defendant's right to appeal that decision.  No more could be expected of him, but Mr. Preston went the extra mile to confirm that the relevant cases supported Judge Goodwin's ruling.  The undersigned proposes that the presiding District Judge **FIND** that Mr. Preston did not deprive Defendant of effective assistance of counsel by not attempting to re-open the motion to suppress.

<u>Sentencing</u>

Defendant contends that Mr. Preston denied him effective assistance of counsel in that he failed to

25

- object to the presentence report
- move for downward departure under USSG §4A1.3
- object to the use of extraneous facts establishing Dumas' prior conviction for intimidation of a witness as a "crime of violence" for Career Offender classification
- argue that Dumas' prior Ohio conviction for intimidation of a witness was not a crime of violence for Career Offender status
- advise Dumas that he could make a collateral challenge to his Ohio conviction.

Defendant's Declaration contains additional statements in support of these allegations. (# 176, ¶¶ 50-60, at 28-29.)

The government's response points out that Mr. Preston presented arguments that Defendant's criminal history category over-stated the seriousness of his prior convictions, that Judge Goodwin specifically found that the Career Offender enhancement was appropriate, that Judge Goodwin followed the holding in Shepard v. United States, 544 U.S. 13 (2005), that Defendant's prior conviction in Ohio for witness intimidation was a crime of violence, and that a defendant cannot collaterally attack, in a federal sentencing hearing, a predicate offense in which the defendant was represented by counsel. (# 188, at 17-20.)

In addition to the excerpts from Mr. Preston's affidavit re-printed above, the affidavit sets forth his specific efforts on Defendant's behalf at sentencing:

> 4) As counsel for Mr. Dumas, I did object to several things in the presentence report. I objected to the fact that there was no role reduction and asked the Court for one. I objected to the career offender enhancement and argued that he did not have the true predicate offen[s]es. I raised the 100 to 1 ratio question which has now been changed a bit. And finally, I objected to his criminal history. It was only after these items were

denied that I was mute on the guideline calculation.  I
fully discussed all our objections with the defendant.

        5) I both objected and briefed the objection in my
Sentencing Memorandum about the predicate offen[s]e
referred to in issue 6 and 7 of the petition.

        6) I tried my best to present as much collateral
attack on the Ohio conviction as the Trial Court would
allow.

(# 188-3, Ex. B, at 3-4.)

        Defendant's reply complains that Mr. Preston did not file a

motion for a downward departure pursuant to USSG §4A1.3.  (# 190,

at 11-12.)  He contends that Judge Goodwin contravened the holding

in Shepard, and did rely on extraneous facts outside of the

charging instrument and statute to determine that Defendant's prior

Ohio conviction was a crime of violence.  Id., at 12-14.  He relies

on the transcript from his guilty plea hearing in Ohio (which is

not part of the record in this case) to support his contention that

he pled guilty to a non-violent offense in Ohio.  Id., at 14-15.

He asserts that he has "diligently been attacking his Ohio

conviction."  Id., at 16.  Defendant, at footnote 4, asserts that

he "filed post-conviction proceedings in the Franklin County Court

of Common Pleas on          See Dumas v. Ohio, Case No.    ."  This

last assertion by Defendant is false.  Court staff has confirmed

with the Clerk of the Franklin County Court of Common Pleas that

Defendant has not filed any post-conviction proceedings with

respect to his conviction for intimidation of a witness.

        The presentence investigation report ("PSR") prepared by the

27

Probation Department listed six juvenile convictions (1992-1997), fifteen adult convictions (1997-2003), and fifteen other charges (1993-2003), all from Columbus, Ohio.  Two of those convictions, a 2002 conviction for trafficking in cocaine (hereinafter referred to as "the prior drug case"), and a 2002 conviction for intimidating a witness (hereinafter referred to as "the Ohio intimidation case"), were the basis for determining that Defendant is a Career Offender.  The prior drug case and the Ohio case are described in the PSR as follows:

> 64. 1/11/02  Age 22   Trafficking in Cocaine (two counts)  Common Plea Court, Franklin County, Columbus, Ohio,   #02CR-31511   04/03/03:  5 years probation, placed on gang and chemical dependence caseload; 03/18/04: probation terminated.   4A1.1(c)  1 [criminal history point]

> The defendant was represented by Sterling Gill.  The criminal complaint states the defendant sold undercover officers two unit doses of cocaine base for $20.  This is a felony offense and is considered a predicate offense, as defined in U.S.S.G. §4B1.2.

> 65. 10/23/02  Age 23   Intimidation of a witness, Common Pleas Court, Franklin County, Columbus, Ohio, #02CR-11-6641  04/03/03:  5 years probation; 03/18/04: probation terminated.   4A1.1(c)  1 [criminal history point]

> The defendant was represented by Sterling Gill.  It is noted that the defendant was on bond supervision for the aforementioned case at the time of this offense.  Mr. Dumas was originally charged with Kidnaping, Felonious Assault, and Intimidation of a Crime Victim or Witness. On October 23, 2002, an alleged confidential informant with the Columbus Police Department entered a residence in which the defendant was present.  Mr. Dumas grabbed the victim by the throat and made the statement, "this bitch is a snitch."  He continued to hold her by the neck, in a choking position and grabbed a knife out of

28

the kitchen drawer.  When the victim tried to deny that
she was an informant, Mr. Dumas sta[r]ted going through
her pockets, raising her clothes in front of others,
looking for a wire or transmitter.  At the time of his
arrest, the defendant admitted he had tried to locate
identification on the victim because his attorney told
him to do so if he ever saw her again.  While on
supervision for this offense, the defendant was sentenced
for Attempting to Traffic in Cocaine.  This is a felony
offense and is considered a predicate offense, as defined
in U.S.S.G. § 4B1.2.

(PSR, ¶ 65, at 13.)  The Career Offender designation is explained

as follows:

70.  Because the defendant was at least 18 years old at
the time he committed the instant offense; the instant
offense of conviction if a felony controlled substance
offense; and the defendant has two prior felony
convictions that include one crime of violence (Paragraph
65) and one controlled substance offense (Paragraph 64),
pursuant to U.S.S.G. §4B1.1, the defendant shall be
considered a Career Offender.  U.S.S.G. §4B1.1(b)
instructs that a career offender's criminal history
category shall be VI.

Id., ¶ 70, at 14-15.

Mr. Preston filed objections to the PSR, raising arguments

concerning the disparity in penalties for cocaine powder and

cocaine base, role in the offense, career offender designation,

criminal history points, and criminal history computation.

(Addendum to PSR, at 1-4.)  The probation officer responded to each

objection, and provided copies of the indictment and judgment in

the Ohio case.

Mr. Preston also filed a sentencing memorandum in which he

addressed the Ohio case and the predicate controlled substance

case, and argued that Defendant should not be sentenced as a career

29

offender.   (# 124, at 1-3.)   Mr. Preston also argued that the crack/powder disparity unfairly punished crack defendants.  Id., at 3-5.

On April 27, 2005, Defendant and Mr. Preston appeared before the court, and Mr. Preston presented his argument on the crack/powder disparity, which was overruled (# 126).  Mr. Preston then asserted that Defendant should receive a reduction in offense level for role in the offense, and suggested that Defendant did not know that he was transporting crack cocaine.  Id.  The hearing was continued to May 26, 2005, so that the parties and the court could review the transcript of Defendant's guilty plea hearing.   (Tr. Disp. Hrng., # 158, at 3-5.)  The objection relating to Defendant's knowledge was withdrawn.  Id., at 5.

During the May 26 sentencing hearing, Mr. Preston contended that Defendant's two predicate offenses which qualified him as a Career Offender were closely related:

> [T]here are two predicate offenses which are listed.  The first is actually a series of two acts.  There were two sales of $20 rocks to a confidential informant.  While this case was pending, Mr. Dumas later on that year ran into this same lady that he had sold the two $20 rocks to.  He did say to her, "The bitch is a snitch," and he wanted her identification, I believe he told or I know he told me he wanted her identification to provide that to his attorney.
>
> There were assorted charges that did come out of that, including kidnapping and, I believe, malicious assault or something like that.  These were not – he did not enter a plea to those, he was not found guilty of those.  He indicated that he did not believe that there was a factual basis for those, that she blew up her

story.  He did admit that he told the lady in front of others, "The bitch is a snitch."

THE COURT: Actually didn't he plead guilty to –

MR. PRESTON: Intimidation of a witness.

THE COURT:  – intimidation of a witness?

MR. PRESTON: Yes, sir.  Which under the Ohio statutory language says it is a threat or, what – physical use of physical force or harm or a threat of harm to a person or property. We would ask the court to consider that there was no actual harm that was delivered. We would also ask the court to consider that under the career offender within the guidelines the two predicate offenses were, in fact, related offenses, though they did not happen at the same time, and we do not declare that they happened at the same time.  They were, in a sense, a part of the same proceeding. And as noted in application note 3 to section 4A1.2, they were consolidated for sentencing.

Id., at 5-7.

The transcript of the guilty plea hearing in State of Ohio v. Dumas, No. 02CR-1511 (Sept. 6, 2002), concerns sales of cocaine base to a confidential informant and undercover police officer on January 11 and 25, 2002.  (# 196, at 7-8.)

The transcript of the guilty plea hearing in State of Ohio v. Dumas, No. 02CR-6441 (Jan. 22, 2003), addressed the charge of intimidation of a witness.  Id., at 12-13.  The prosecution gave the factual basis for the plea as follows:

Miss Coleman [the confidential informant] was successful in cooperating with the police purchasing narcotics on several different occasions. * * * Eventually her identity became relatively well known to most of the drug dealers on the east side of Columbus.

One of those people that was arrested in the sweep

31

on Sixth Precinct was Mr. Dumas.   He is awaiting
sentencing by this court on two F-4s [felonies in the
fourth degree] trafficking in crack cocaine.   Rhonda
Coleman was at an address of 388 North Garfield Avenue.
She walked into the kitchen of that address and came into
contact with the defendant, Mr. Dumas.   He made some
comments to her regarding her involvement with the police
department.   She was referred to as being a snitch.   He
made additional comments.   There was some physical
contact between them.

Miss Coleman became very afraid for her safety.   She
fled out the front of the residence.   She called the
undercover officer that had been primarily in charge of
operating her through these drug operations, Detective
Whitaker.   She called him on her cell phone and she held
the phone up in the air and Officer Whitaker was able to
hear Mr. Dumas, who she identified as Mr. Dumas, shouting
things to her from the front porch of that address.

There was some allegations of possibly a weapon
being involved.   However, in the spirit of resolving this
matter short of trial, we were satisfied with the
resolution, as is Miss Coleman and the Columbus Police
Department.   We are in no way demeaning the seriousness
of what he did.   Without the cooperation of people such
as Miss Coleman, none of this investigation would have
proven to be useful at all.

Id., at 13-15.  After waiving his constitutional rights, Defendant

told the Ohio presiding judge that he was pleading guilty "to avoid

the consequences of going to trial." Id., at 24.  He did not state

his factual basis for the plea, and he did not confirm the

prosecution's proffer.

On April 3, 2003, a sentencing hearing was held on both the

crack distribution case and the Ohio intimidation case.   Id., at

28.   The first fourteen pages of the sentencing transcript are

comprised of Defendant's attorney's description of certain

rehabilitative programs.   Id., at 28-42.   The following exchange

32

took place:

     THE COURT: Well, this young lady was a C.I. who was
involved in this trafficking case, and you recognized her
and you grabbed her when she came into this . . . house.

              * * *

     THE COURT: Well, the bottom line is you grabbed this
gal around the neck and said something, at least the
report says you said, "This bitch is a snitch," and took
a knife and held it to her neck.

     MR. GILL [Defendant's attorney]: He did not plead to
that, Your Honor.  Those counts were nolled.  He denies
he had a weapon.  He did not have a weapon.  He did not
grab her by the neck.  He did do the verbal confrontation
that he tucked her on the sleeve.  He denies grabbing her
about the neck.  There were no marks or witnesses to
that.  He denies that there's a knife.  There is no knife
involved in this.  Judge, he did not pull a knife on this
woman.

Id., at 42-43.  The prosecution did not respond to these remarks.

The Ohio judge sentenced Defendant as follows:

     THE COURT: Willie, you're skating close to the edge.
This is truly the last chance.  Five years of community
control in each case.  You will be on the gang/chemical
dependency caseload.  I want you to enter and
successfully complete the Diversified Program under
Pastor McGhee.  You are to have no drugs or alcohol in
your system for the next five years.

              * * *

I want you to get full-time employment.  I want you to
maintain full-time employment.  I want you to get your
GED within a year.  Do whatever [the probation officer]
tells you to do.

Id., at 44.  Less than one year later, Defendant was arrested in

Beckley.  According to the presentence report, Defendant had

participated in outpatient drug counseling, and was employed until

33

February, 2004, but he did not obtain his GED.   (PSR, ¶¶ 102-03, 105, at 20.)

It was determined during the Federal sentencing hearing that the prior drug case and the Ohio intimidation case were not related because they were for offenses that were separated by an intervening arrest.   (Tr. Disp. Hrng., # 158, at 8-10.)

Judge Goodwin ruled that it was not necessary for the United States to file an information seeking enhanced penalties due to Defendant's prior drug case, noting that the Career Offender enhancement did not raise the maximum statutory penalty to which Defendant was exposed.   Id., at 11.

With respect to the Ohio intimidation case, Judge Goodwin made the following finding:

> I find that the intimidation of a witness offense qualifies as a predicate offense under the definitions provided in section 4B1.2 for the reasons that the government just outlined.  Guidelines – that section of the guidelines defines crimes of violence as any offense under state or federal law punishable by imprisonment for a term exceeding one year that: One, has as an element the use, attempted use, or threatened use of physical force against the person or another.
>
> Mr. Dumas' intimidation conviction necessarily had such an element, or he couldn't have been convicted of it.   The indictment, in fact, charged him of acting by force or unlawful threat of harm.  Mr. Dumas pled guilty to that count of the indictment.
>
> I further find that my decision doesn't run afoul of Sheppard versus United States.   Sheppard involves a disputed fact essential to increase the ceiling of a potential sentence.   By ceiling, the court meant the statutory maximum, not the outer edge of the advisory guideline range.

Second, the <u>Sheppard</u> court held that, "the determination of whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense, is limited to the terms of the charging document, the terms of the plea agreement, or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant or to some comparable judicial record of this information."

This court need only look to the charging document in this case.  The necessary element of violence is contained therein.  The defendant pled guilty to a crime an element of which was force or unlawful threat of harm. Thus this offense fits within the definition of violent crime for a career offender purposes.

<u>Id.</u>, at 12-13.

The statute at issue is Ohio Revised Code § 2921.04, which

reads:

(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder . . . or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.

* * *

(D) Whoever violates this section is guilty of intimidation of an attorney, victim, or witness in a criminal case. * * * A violation of division (B) of this section is a felony of the third degree.

The indictment provides:

<u>Count 3</u>

The Jurors of the Grand Jury of the State of Ohio, duly selected, impaneled, sworn, and charged to inquire of crimes and offenses committed within the body of Franklin County, in the State of Ohio, upon their oath do find and present that Willie L. Dumas, late of said County, on or about the 23rd day of October in the year of our Lord, 2002, within the County of Franklin aforesaid, in violation of section 2921.04 of the Ohio

> Revised Code, did knowingly, and by force or unlawful
> threat of harm to any person or property, attempt to
> influence, intimidate or hinder a witness involved in a
> criminal action or proceeding, to wit: Rhonda Coleman in
> the discharge of the duties of said witness, contrary to
> the statute in such cases made and provided against the
> peace and dignity of the State of Ohio.

(Attachment to PSR.)

The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel by Mr. Preston in connection with his sentencing, that Mr. Preston did object to Defendant's status as a Career Offender, that Mr. Preston presented cogent arguments on Defendant's behalf, and that Mr. Preston's representation fell within the wide range of professionally competent assistance. It is true that Mr. Preston did not file a motion for a downward departure, but the arguments made by him were the functional equivalent of such a motion. The presiding District Judge should further **FIND** that no violation of Shepard occurred because the Ohio intimidation case indictment clearly sets forth the necessary element to qualify as a crime of violence. Finally, Mr. Preston was under no obligation to advise Defendant with respect to any collateral challenge he might make to the Ohio intimidation case.

Appellate Counsel

Defendant's appellate counsel was Marc L. Resnick, who was appointed by the Court of Appeals. Defendant contends that Mr. Resnick was ineffective because he failed to raise the following

36

issues on appeal:

- That Dumas' plea was involuntarily induced by false promises by counsel Mason Preston
- Counsel Stanley Selden was ineffective for not calling witnesses on defendant's behalf
- Counsel Preston was ineffective for not refiling motion to suppress
- For not appealing Dumas' sentence
- For not consulting defendant about what issues to present.

(# 176, at 18-19.)  Defendant did not elaborate on these claims against his appellate counsel, although they are discussed in detail with respect to his trial court counsel.

The government's response points out that Defendant has failed to raise a meritorious argument on any of these claims.  (# 188, at 27.)  The response includes an affidavit from Mr. Resnick which provides, in pertinent part, as follows:

> 5.  Upon my review of the record of Mr. Dumas's underlying criminal conviction, I learned that Mr. Dumas had pled guilty but reserved the right to appeal the district court's denial of his motion to suppress evidence and statements.  It was obvious that the district court's denial of the suppression motion was the only real issue for appeal and that there were no other meritorious issues to bring on appeal.

> 6.  I contacted Mr. Dumas regarding his appeal and informed him that the denial of his suppression motion was the issue I planned to bring on appeal.  Mr. Dumas consented to my plan.

> 7.  I have no recollection of Mr. Dumas asking me about briefing any other issues on his appeal.

(# 188-4, Ex. C, ¶¶ 5-7, at 1-2.)

Defendant's reply argues that he has raised claims which are meritorious in that his guilty plea was invalid, he was denied

37

effective assistance on appeal, and his sentence is unlawful.

The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel on appeal, that Mr. Resnick made appropriate strategic decisions with regard to the issue to be raised on appeal, and that Defendant has failed to demonstrate that a meritorious issue should have been raised which would have made a material difference in the outcome of Defendant's case.

### Ground two - Voluntariness of the Plea

For the reasons set forth in the section of this Proposed Findings and Recommendation pertaining to Defendant's claim that he was denied effective assistance of counsel with respect to the entry of his guilty plea, the undersigned proposes that the presiding District Judge **FIND**, based on Defendant's own statements made under oath at the guilty plea hearing, that Defendant has failed to show that his guilty plea was not knowing and voluntary.

### Evidentiary Hearing

The undersigned proposes that the presiding District Judge **FIND** that the claims raised by Defendant can be resolved by review of documents which comprise the record in his case and that an evidentiary hearing is not required.

### Motion to Amend - Drug Disparity

On February 8, 2008, Defendant filed a motion to amend his § 2255 motion to include a ground that he was incorrectly sentenced

38

based on the crack/powder disparity in the Guidelines.  The court did not request a response from the government, as this claim lacks merit.  The undersigned doubts that Defendant's proposed amendment relates back to his § 2255 as filed; nonetheless the court will recommend that the motion to amend be granted.

Defendant was appropriately sentenced as a Career Offender pursuant to USSG §4B1.1(a), which is based on 28 U.S.C. § 994(h). Section 4B1.1(b) established both his Offense Level and his Criminal History Category.  Defendant's reliance on <u>Kimbrough v. United States</u>, ___ U.S. ___, 128 S. Ct. 558 (2007), is unavailing because the government's evidence as to drug quantity and the type of drug was not the determinative factor in his sentence.  The crack/powder disparity was irrelevant to the determination of his sentence.  His guilty plea to engaging in a conspiracy to distribute 50 grams or more of crack cocaine resulted in his exposure to a maximum term of imprisonment of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii); his prior criminal record dictated his Criminal History Category.

Judge Goodwin imposed a sentence at the bottom of the advisory guideline range and explained his reasons as follows:

> The reasons for the sentence imposed: After considering the advisory guideline range, I went through each of the factors under 3553(a).  I looked at the nature and circumstances of this offense.  This defendant was bringing in and helping to bring in very large quantities of crack cocaine from out of state for sale in this area.

It wasn't his first time to be dealing drugs.  He had previously been convicted of dealing cocaine in the past, and he had engaged in violent behavior.  My information is that rather than making just some off hand remark to a witness, he had actually threatened her with a knife and was convicted of intimidating a witness.

The length of the sentence is awfully long, but the interest of having sentences which are reasonably consistent with the sentence of other people convicted of similar conduct means to me people who are convicted anywhere in this country of similar conduct, not just other defendants in this case or recent case.  You qualify under the statute, under the rules, as a career offender.

Now, interestingly enough, being a career offender only moves you up from a Category IV to a Category VI.  You already were a Category IV criminal without the career enhancement.  If I just sentenced you without looking at the career enhancement, you would have done at the top of that range 15 years.  You're a young man, but you have a long criminal history.  Not all your convictions involved drugs, but you have been in trouble since you were a teenager.  I know that this sentence is so very long that if it doesn't prove a deterrence to such conduct, I can't imagine what a sentence would be that would deter it.

* * *

I find that with the career offender enhancement, Mr. Dumas' sentence was not drastic or disproportionate of his criminal history and prior offenses.  I find that it reflects the nature and circumstances of the offense and the history and characteristics of this defendant and the needs for deterrence.

I find that the evidence of drug amounts was not only proven by a preponderance of the evidence, but by beyond a reasonable doubt, including the defendant's admission.  I have very high confidence that the amount of drugs here is accurate.

(Tr. Disp. Hrng., # 158, at 22-24.)

Based on the foregoing, the undersigned proposes that the

40

presiding District Judge **FIND** that Defendant's sentence was based on his guilty plea and his status as a Career Offender, and the crack/powder disparity was irrelevant.

**Recommendations**

It is respectfully **RECOMMENDED** that Defendant's Motion to Amend (# 185) be granted, that Defendant's § 2255 Motion be denied, and this case be dismissed.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a

waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to Defendant and to counsel of record.


<u>  February 3, 2009  </u>
       Date

Mary E. Stanley
United States Magistrate Judge

42